MEMORIAL HERMANN HOSPITAL
SYSTEM, Appellant,

v.

PROGRESSIVE COUNTY MUTUAL
INSURANCE COMPANY,
Appellee.

No. 01–10–00408–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

March 17, 2011.

Rehearing Overruled May 19, 2011.

Margaret A. Pollard, Jared Cole Johnson, for Memorial Hermann Hospital System.

Maurice Joseph Meynier IV, for Progressive County Mutual Insurance Company.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

JANE BLAND, Justice.

Under the Texas Hospital Lien Law, a hospital "has a lien on a cause of action or claim of an individual who receives hospital services for injuries caused by an accident that is attributed to the negligence of another person." TEX. PROP.CODE ANN. § 55.002 (West 2007). To secure the lien, section 55.005 of the Texas Property Code requires that a hospital file notice with the county clerk before payment to the entitled party. The statute also declares that the county clerk "shall index the record in the name of the injured individual." TEX. PROP.CODE ANN. § 55.005 (West 2007).

In this case, Progressive County Mutual Insurance Company (Progressive) settled a claim brought by Carlos Martinez against its insured arising out of Martinez's injuries in a car accident. Memorial Hermann Hospital filed a hospital lien for the cost of Martinez's medical treatment half an hour before Progressive issued the settlement check. A hospital lien usually attaches to settlement proceeds, and an insurance company usually names the hospital lienholder as a payee on the settlement check. But in this case, because the clerk had not yet indexed the lien, Progressive maintains that it was unaware of the lien and, therefore, it did not name Memorial Hermann as a payee.

The trial court's summary judgment ruling interprets the hospital lien law as requiring that the clerk index the lien before it can be considered secured, and thus holds that the timing of the indexing controls perfection of the lien. Memorial Hermann contends on appeal that the lien is secured on filing, and thus it was enti-

tled to allocation of the settlement proceeds. We agree. We therefore reverse the summary judgment and remand the case for further proceedings.

## Background

On October 29, 2007, a driver insured by Progressive caused a car accident that injured Carlos Martinez. Martinez was transported from the accident site to Memorial Hermann Hospital where he received treatment for his injuries. The cost of his treatment totaled $130,365.92.

On November 20, 2007, Progressive and Martinez settled his negligence suit arising out of the accident. Progressive issued a check to Martinez, his wife, their attorney, and Memorial Hermann for $100,007.00.

The parties did not cash the check. Shortly after receiving it, the Martinezes' counsel contacted Progressive and asked it to issue a new check that did not include Memorial Hermann as a payee. Counsel explained that Memorial Hermann had not filed a lien notice for the cost of Martinez's treatment, so the Martinezes were not required to allocate their settlement proceeds toward payment of the hospital bill.

Progressive re-issued the check as directed at 3:23 P.M. on December 12, 2007. Thirty minutes before, on the same date, Memorial Hermann had filed its notice of lien with the Harris County Clerk's Office.

Before issuing each check, Progressive conducted lien searches on the county clerk's website. It conducted a search on November 19 before issuing the first check. On the afternoon of December 12, before issuing the second check, Progressive searched the website twice, first at 2:25 P.M., and again at 3:30 P.M. None of the searches revealed the existence of a lien on the Martinez settlement.

According to the county clerk, the process of recording and indexing the lien usually takes two business days after filing. The clerk testified that the Memorial Hermann lien on Martinez's settlement was not indexed until December 17, 2007.

Progressive moved for summary judgment on both traditional and no-evidence grounds, contending that Memorial Hermann was not entitled to the settlement proceeds because it could not show that the Harris County Clerk had indexed its hospital lien on Martinez's personal injury claim proceeds before Progressive paid out the settlement. The trial court granted the motion, and Memorial Hermann appeals.

## Discussion

### I. *Summary judgment standard of review*

We review de novo the trial court's grant of a motion for summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 848 (Tex. 2009). After an adequate time for discovery, a party may move for no-evidence summary judgment if no evidence exists of one or more essential elements of a claim or defense on which the adverse party bears the burden of proof at trial. TEX.R. CIV. P. 166a(i); *see also Hamilton v. Wilson,* 249 S.W.3d 425, 426 (Tex.2008). The trial court must grant a no-evidence summary judgment motion unless the non-movant produces competent summary judgment evidence that raises a genuine issue of material fact on each element specified in the motion. TEX.R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex.2006). In a traditional motion for summary judgment, the movant must establish that no genuine issue of material fact exists and the movant is thus entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). To determine if the non-movant raises a fact issue, we review the evidence in the light most favorable to

the non-movant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *See Fielding,* 289 S.W.3d at 848 (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005)).

When, as here, a party moves for summary judgment on both traditional and no-evidence grounds, we first review the trial court's decision under the no-evidence standard. *See* TEX.R. CIV. P. 166a(i). If the non-movant failed to produce more than a scintilla of evidence raising a genuine issue of fact on the challenged elements of his claim, we need not consider whether the movant met his burden on the motion for traditional summary judgment. *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 600 (Tex.2004).

## II. Interpretation of Hospital Lien Law

█ This case concerns the proper reading of the hospital lien statute. Statutory interpretation is a question of law that we review de novo. *Bragg v. Edwards Aquifer Auth.,* 71 S.W.3d 729, 734 (Tex.2002); *In re Canales,* 52 S.W.3d 698, 701 (Tex.2001). Our primary goal in interpreting a statute is to ascertain and to effectuate the legislative intent. *Id.* at 702. In doing so, we examine the statute's plain language. *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex.2001); *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865 (Tex.1999). We presume the legislature included each word in the statute for a purpose and that words not included were purposefully omitted. *In re M.N.,* 262 S.W.3d 799, 802 (Tex.2008). We may also consider: the object sought to be obtained; the circumstances of the statute's enactment; the legislative history; the common law or former statutory provisions, including laws on the same or similar subjects; the consequences of a particular construction; ad-

ministrative construction of the statute; and the title, preamble, and emergency provision. TEX. GOV'T CODE ANN. § 311.023 (West 1998); *Helena Chem. Co.,* 47 S.W.3d at 493 (citing *Ken Petroleum Corp. v. Questor Drilling Corp.,* 24 S.W.3d 344, 350 (Tex.2000)). Additionally, we presume that the legislature intended a just and reasonable result; a result feasible of execution; the entire statute to be effective; and the public interest to be favored over any private interest. TEX. GOV'T CODE ANN. § 311.021 (West 2005); *Helena Chem. Co.,* 47 S.W.3d at 493.

The Texas Hospital Lien Law allows a hospital to place a lien on the claim of an individual who receives medical care for injuries from an accident caused by the negligence of another. TEX. PROP.CODE ANN. § 55.002. To secure a lien, the statute prescribes the following procedure:

(a) . . . . a hospital or emergency medical services provider must file written notice of the lien with the county clerk of the county in which the services were provided. The notice must be filed before money is paid to an entitled person because of the injury.

(b) The notice must contain:

(1) the injured individual's name and address;

(2) the date of the accident;

(3) the name and location of the hospital or emergency medical services provider claiming the lien; and

(4) the name of the person alleged to be liable for damages arising from the injury, if known.

(c) The county clerk shall record the name of the injured individual, the date of the accident, and the name and address of the hospital or emergency medical services provider and

shall index the record in the name of the injured individual.

Tex. Prop.Code Ann. § 55.005.

In granting summary judgment, the trial court interpreted the requirement that the lien notice be filed "before money is paid," set out in subsection (a), as applying to subsection (c)—the clerk's recording and indexing requirement. Memorial Hermann contends that this interpretation is incorrect; the county clerk's ministerial recording and indexing is not required to secure the lien.

 We read the plain language of section 55.005 as providing that a lien is secured when the lienholder properly files with the county clerk a written notice of lien that complies with the statutory requirements. Subsection (a) contains the only temporal restriction relating to the lien. *See* Tex. Prop.Code Ann. § 55.005(a) ("[N]otice must be filed before money is paid...."). The temporal language is in passive voice, but it refers only to the action of filing, and does not refer to the county clerk's obligation. The language preceding the temporal language makes the hospital responsible for filing the lien notice. The requirement that the lien notice "be filed before money is paid" thus applies only to the filing requirement, which falls squarely on the hospital. *See Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex.2000) (describing doctrine of last antecedent, a canon of statutory construction instructing that "that a qualifying phrase ... must be con-

fined to the words and phrases immediately preceding it to which it may, without impairing the meaning of the sentence, be applied.").

Subsection (c) requires the county clerk to index the lien, but does not set any deadline. Progressive claims that section 13.002 of the Property Code, which declares that a properly recorded instrument is "notice to all persons of its existence" and "subject to inspection by the public," is evidence that the legislature intended that proper recordation be necessary to provide the public with notice. *See* Tex. Prop.Code Ann. § 13.002 (West 2004). According to Progressive, the provision's emphasis on recording, rather than filing, supports the conclusion that the lien is not effective until it is properly recorded. The Property Code, however, specifies that the duty of proper recordation belongs to the county clerk. Tex. Prop.Code Ann. § 11.004(a) (West 2004) (providing that clerk must correctly record instruments, as required by law, "within a reasonable time after delivery"). Section 11.004 also makes the county clerk liable for damages and civil penalties if it violates the specified recordation requirements. *See* Tex. Prop.Code Ann. § 11.004(b). Progressive's proffered interpretation would potentially expose the county clerk to liability under circumstances like those presented here, that is, when the hospital files its notice of lien timely but the insurer issues the settlement check before the clerk records the notice of lien. We do not believe that the legislature intended that result.[1] Other

---

1. Progressive also relies on *Methodist Hospitals of Dallas v. Mid–Century Insurance Co. of Texas*, 259 S.W.3d 358 (Tex.App.-Dallas 2008, no pet.), in contending that section 55.005 requires strict adherence, but our conclusion that Memorial Hermann's notice of lien complies with the statutory requirements renders that case inapposite. In *Methodist*, the Dallas court of appeals affirmed summary judgment

in favor of the insurer on the grounds that substantive errors in the notice rendered the lien unenforceable. *Id.* at 360–61. The court rejected the hospital's contention that it had substantially complied with the statutory requirements, concluding that (1) the error in specifying the date of the accident was not insubstantial because the express language of the statute made the date of the accident "a

statutory provisions similar to section 55.005 emphasize the lienholder's filing responsibility and expressly disclaim any consequence from a delay or error in the clerk's ministerial duty to index lien notices. *See* Tex. Bus. & Com.Code Ann. § 9.517 (West Supp.2010) ("The failure of the filing office to index a record or to correctly index information contained in a record does not affect the effectiveness of the filed record."); Tex. Agric. Code Ann. § 128.048 (West 2004) (providing that, with respect to chemical and seed liens, Chapter 9 of Business & Commerce Code applies to extent it is otherwise consistent with chapter); Tex. Prop.Code Ann. § 53.052 (West 2007) (declaring that person claiming lien arising from a residential construction project must file affidavit with county clerk "not later than the 15th day of the third calendar month after the day on which the indebtedness accrues not later than the 15th day of the third calendar month after the day on which the indebtedness accrues," and requiring county clerk to record, index, and cross-index affidavit, but specifying that "[f]ailure of the county clerk to properly record or index a filed affidavit does not invalidate the lien."). Further, the statutes consistently instruct the clerk to record liens according to the date and time of the filing or receipt, not by the date of indexing or recording. *See* Tex. Bus. & Com.Code Ann. § 261.008 (West 2009) (requiring secretary of state to note "day and hour of receipt" on utility security instruments); Tex. Fam. Code Ann. § 157.316 (West Supp.2010) (providing that child support lien is perfected when abstract of judgment for past due child support or child support lien notice is filed or delivered).

Our interpretation of section 55.005 comports with the law's purpose, which "is to provide hospitals an additional method of securing payment for medical services, thus encouraging the prompt and adequate treatment of accident victims." *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 309 (Tex.1985), *quoted in Daughters of Charity Health Servs. of Waco v. Linnstaedter*, 226 S.W.3d 409, 411 (Tex.2007); *Members Mut. Ins. Co. v. Hermann Hosp.*, 664 S.W.2d 325, 326 (Tex.1984) (explaining that legislature aimed to encourage hospitals to treat persons injured in accidents on emergency basis by providing means of obtaining compensation for care of patients who otherwise would be unable to pay).

Applying the plain language of the statute to the facts, Memorial Hermann's lien on Martinez's settlement proceeds was secured before Progressive executed the check for payment of the settlement.

### III. Effect of corporate representative's deposition testimony

■ Memorial Hermann's corporate representative, Michael Bennett, testified in his deposition that he did not believe the lien in this case was properly secured according to statute. Progressive included an excerpt of this testimony as evidence in support of its motion for summary judgment, arguing that Bennett's statement estopped Memorial Hermann from taking a contrary position. Memorial Hermann complains of the summary judgment to the extent it relies on this testimony.

■ "[A]ssertions of fact, not pleaded in the alternative, in the live pleadings of a party are regarded as formal judicial ad-

---

critical component of the notice," and (2) the error in listing the injured person—instead of Mid–Century's insured—as the person liable for the damages made the lien notice unenforceable on its face. *Id.* at 361. Interesting-

ly, the court of appeals noted in passing that the hospital filed the lien a day after the insurer issued the settlement check, but did not address the issue of the lien notice's timeliness. *See id.* at 359–60.

missions." *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 568 (Tex. 2001) (quoting *Houston First Am. Sav. v. Musick,* 650 S.W.2d 764, 767 (Tex.1983)). Bennett's statement is one of opinion, not fact. *See Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 122 (Tex.1996) (holding that affidavit containing opinion that "failure to notify amounts to concealment or a known violation of the specifications and industry practice," was conclusory and did not raise a fact issue in support of summary judgment); *TX Far West, Ltd. v. Tex. Invs. Mgmt., Inc.,* 127 S.W.3d 295, 307–08 (Tex. App.-Austin 2004, no pet.) (holding that affiant's opinion that restrictive covenant had neither been abandoned nor its enforcement waived stated only legal conclusion and thus could not support summary judgment). Bennett's opinion cannot trump the application of the statute's plain language to undisputed facts.

### Conclusion

We hold that, under the Texas Hospital Lien Law, Memorial Hermann's lien was secured on filing, which was accomplished before Progressive paid out the settlement funds. We therefore reverse the summary judgment and remand the case for further proceedings consistent with this opinion.